CASE 40.—ACTION BY WILLIAM RANDALL AGAINST  THE WESTERN UNION TELEGRAPH  COMPANY  FOR DAMAGES FOR FAILING TO DELIVER A TELE-GRAM.—January 31, 1908.

## Randall v. Western Union Telg. Co.

Appeal from Pulaski Circuit Court.

Judgment for defendant and plaintiff appeals.— Affirmed.

Telegraphs—Failure to Deliver Telegram—Damages—Mental Suf-fering.—An action will not lie by the sendee of a telegram to recover damages for mental anguish occasioned by the negligent failure of the telegraph company to deliver a tele-gram announcing the death of the sendee's fiancee in time to enable him to attend her funeral; recovery for mental anguish being permitted only in case of the death of a near relative.

MORROW & MORROW for appellant.

RICHARDS & RONALD and GEORGE H. FEARONS for ap-pellee.

OPINION OF THE COURT BY COMMISSIONER CLAY—Affirming.

Appellant, William Randall, instituted this action against appellee, The Western Union Telegraph Company, to recover damages for a failure on the part of the latter to deliver to him a telegram announcing the death of Mrs. Terry, to whom he was engaged to be married. The petition, after setting forth the residence of appellant in Somerset, Kentucky, and the incorporation of appellee, alleged that on the 28th day of January, 1906, Arthur Terry delivered to appellee in Cincinnati, Ohio, the following message: "Dated Cincinnati, Ohio, 28th. To Mr. William Randall, Somerset, Kentucky. Come to Cincinnati as soon as you get this, as mother is dead. Arthur Terry;" that said message was prepaid, and appellee accepted it for transmission, and received and accepted pay therefor; that said message was received at Somerset, Kentucky, at 9:35 a. m., January 28th, 1906; that appellant lived within the corporate limits of the city of Somerset, and within the delivery district of appellee, where he was well known and was at the time said message was received, and that thereafter during the 28th, 29th and 30th of January, 1906, he was in said city; that appellee carelessly and negligently failed to deliver said message to him on the 28th day of January, or on the 29th day of January, and that he did not receive said message until the 30th day of January, 1906; that if said message had been delivered to him promptly and within a reasonable time, he could and would have left Somerset at noon on the 28th day of January, and could and would have arrived in Cincinnati in time to have seen the corpse and have attended the funeral

and burial of Mrs. Terry, which service occurred on January 29th, 1906; that said message was sent for the purpose of informing him of the death of Mrs. Terry, who, at the time of her death was engaged to be married to appellant; that said marriage was to have taken place in the month of February, 1906, and that at the time said message was sent the contract and agreement of marriage was in full force and effect, and would have been consummated had it not been for the death of Mrs. Terry; that by reason of appellee's carelessness and negligence in failing to deliver said message, appellant was caused to and did suffer great physical and mental anguish by reason of having been unable to attend the funeral and see for the last time the corpse of his affianced wife. Appellant then asked damages in the sum of $1,800.00. A demurrer was filed to the petition and sustained. Appellant having declined to plead further, judgment was entered dismissing his petition. From that order this appeal is prosecuted.

The question in this case is, whether a telegraph company is answerable in damages for mental suffering caused by its failure to deliver a social message, by reason of which the sendee is prevented from attending the funeral services of one to whom he was engaged, but who was not of the slightest degree of relationship to him.

In the case of Western Union Telegraph Co. v. Steenbergen, 107 Ky. 469, this court said:

"It is insisted for the company that, even in the courts of those states where mental anguish can be made the basis of recovery, the rule has never been extended beyond nearest degrees of blood relationship.

"This contention seems to be supported by the authorities.

"Certainly no legal presumption of such affection arises as will warrant a recovery for mental anguish, except in cases of such relationship.

"Thus, in Telegraph Co. v. Coffin (Texas, Sup.), (30 S. W., 896), a recovery was denied to a brother-in-law; in Same v. McMillan (Tex. Civ. App.), Id., 298, to a sister-in-law; in Same v. Garrett (Tex. Civ. App.), (34 S. W., 649), to a step-son; and in Same v. Gibson (Tex. Civ. App.), (39 S. W., 198), to a son-in-law."

In the case of Robinson v. Western Union Telegraph Co., 24 Ky. Law Rep. 452, this court also said:

"This court is committed to the doctrine that a telegraph company is answerable in damages for mental suffering caused by its failure to deliver a social message, by reason of which the sender or person addressed is prevented from attending at the bedside, at the death or at the funeral of a near relative. (Chapman v. W. U. Tel. Co., 90 Ky. 265, and subsequent cases.) We have not applied the doctrine, however, further than to the class of cases referred to, and then the liability has been restricted to those of the first degree of relationship."

In Denham v. The Western Union Telegraph Co., 27 Ky. Law Rep. 999, this court again said:

"Since the Chapman case, 90 Ky., 265, this court has been committed to the doctrine that an action will lie against telegraph companies in damages for mental suffering, caused by its failure to deliver special messages by reason of which the sender or person addressed is prevented from attending the bedside, at the death of, or at the funeral of, a near relative. The court has only allowed recoveries to

those of the first degree of relationship. (Robinson v. Western Union Telegraph Co., 24 Ky. Law Rep., 52; Western Union Telegraph Co. v. Steenbergen, 21 Ky. Law Rep., 1289; Western Union Telegraph Co., v. Wilson, —— Ky. Law Rep., ——.) This is not an action to recover damages because the sender of the message was not permitted to be at the bedside of a sick relative, or to attend the funeral of a near relative, but is to recover damages because she was required to keep the body of a relative for two days and nights. Even if such an action could have been maintained for mental anguish by a near degree relative on the averments of the petition, still the appellant is not entitled to recover, because she did not sustain that relationship. There are many breaches of contracts which occasion mental suffering, but no action will lie therefor.''

Counsel for appellant argue with great earnestness and much force, that in this State husband and wife, father and son, brother and sister, have been permitted to recover for their mental suffering occasioned by being unable through delay in the delivery of telegrams to be present and see their loved ones before burial, or at their bedside before death; that the relationship of a plighted man and woman is, next to that of husband and wife, the dearest and most sacred relationship on earth; that the difference between betrothed lovers with their marriage day almost in sight, and husband and wife, consists only in the fact that man has not proclaimed what two hearts have already before God made certain; that if the appellant had been the husband of Mrs. Terry for one month, he could have recovered for the mental anguish caused by the negligence of appellee; that there is no material difference in the two cases

so far as mental anguish is concerned; that the suffering of a man about to marry is just as great as that of a man who has married. We confess that, in many instances, the mental anguish in the one case would be as great as in the other; but if the rule should be extended to apply to cases of expected relationship, it should apply whether the wedding was to take place in one month, in six months, or in one year, or even at a date that had never been fixed. The affection of engaged couples frequently changes on one side or the other; many engagements are never consummated by marriage. If the rule, then, were extended to include cases of persons who bore no actual relationship to each other, but merely expected to become husband and wife, damages could be recovered by men or women for mental anguish occasioned by their inability to attend the funeral of persons to whom as a matter of fact they would never be married, and to whom they would never bear the relationship of husband or wife. If the rule should be extended to include engaged couples, there would be no good reason why it should not include friends; for in many instances the relationship between friends is marked by a devotion and love as great, if not greater, than that of those connected by ties of blood relationship. The doctrine being thus extended, it would be easy to prove not only the fact of the engagement, but that every engagement was to be actually consummated. It would also be easy to prove not only the fact of the friendship, but the close intimacy and the genuine attachment existing between the parties. For these reasons, we think the rule heretofore announced by this court should be strictly adhered to, and that the doctrine in cases of this character should not be further extended.

Judgment affirmed.