# Western Union Telegraph Co.
# v. Northcutt.

*Damages for Failure to Deliver Telegram.*

(Decided Dec. 17, 1908.   Rehearing denied Feb. 5, 1909.
48 South. 553.)

1. *Principal and Agent; Undisclosed Principal; Right of Action.*—An undisclosed principal may sue on a contract made by his agent relative to the sending and delivery of a telegram.

2. *Same; Relation.*—Where one requests another to send a telegram the relation of principal and agent is not established so as to authorize a recovery for a delay in delivery by the principal if the other person sent the telegram on his own account, and not as an agent.

[Western Union Telegraph Co. v. Northcutt.]

3. *Telegraphs and Telephones; Action; Damages; Knowledge of Necessity of Despatch.*—In order to recover for delay in delivery of telegram it is not necessary that the circumstances requiring despatch be brought to the company's knowledge or even that the message be intelligible on its face, since because of the peculiar duties of the telegraph company, the mere sending of a message is notice to it that expedition is required.

4. *Same; Damages; Mental Suffering.*—Where a right of action exists independent of mental suffering such suffering is the subject of recovery in an action for delay in delivering a telegram which causes the absence of one whose presence would be consoling in the time of grief ; but the parties must be closely related and the delayed telegram must have announced such an event as sickness or death.

5. *Same.*—Where one's relation to the contract was not disclosed to the company, and did not appear from the telegram (it having been sent by another as an undisclosed agent) plaintiff could not recover for mental anguish resulting from delay in delivery, thus causing a failure of relatives to attend a funeral.

6. *Same; Admissibility of Evidence; Mental Suffering.*—Damages for mental suffering by the sender of a telegram resulting from delay in delivery by which the relatives were prevented from attending the funeral, can only be recovered for the time between which the relatives could have arrived at the place of burial, had the telegram been promptly delivered, and the time when they actually arrived; so that evidence of mental suffering from the time the husband was killed was inadmissible.

7. *Same.*—Direct evidence of one's mental suffering caused by non-attendance of relatives at the funeral of the husband, on account of a delay in the delivery of a telegram, is not admissible.

8. *Same; Jury Question.*—Where there was evidence tending to contradict the genuineness of the signature of the delivery sheet which was put in evidence as to the time when the telegram was received, it became a geustion for the jury to determine the time of delivery.

9. *Same; Evidence.*—The telegram received by the sendee was admissible in evidence in an action by the sender for delay in delivery of the telegram ; the meaning of the letters and figures thereon and by whom they were placed, as well as the question whether the person delivering it was the company's agent being open to proof, if uncertain or disputed.

10. *Same; Instructions.*—A charge asserting that if the telegram was delivered to the father of the sender before a train passed his station from the time the telegram was delivered to the company at the place it was sent, plaintiff could not recover, was bad, since the train might have passed just after the receipt of the telegram but within such a time as not to have enabled him to reach the depot, and thus have attended the funeral of the son-in-law.

11. *Principal and Agent; Relation.*—The minds of both the principal and agent must meet in order to create an agency.

12. *Evidence; Documents; Determination of Adminissibility.*—The delivery sheet showing when the telegram was delivered was admissible upon proof of the genuineness of the signature thereto, although there was conflict in the evidence as to its genuineness; the whole question being for the determination of the jury.

[Western Union Telegraph Co. v. Northcutt.]

13. *Witnesses; Impeachment; Impeaching Own Witnesses.*—A party litigant cannot ask his own witness a question for the purpose of impeaching his credit, although the testimony of the witness contradicts that of the party.

14. *Trial; Reception of Evidence; Time for Objection.*—Where a. objection was not made to a question till after it was answered, the objection came too late.

15. *Same; Conduct of Court; Remarks.*—A remark by the court to the defendant's counsel after the message received by the sendee had been admitted, (the defendant denying its delivery) "you are responsible for it," was error.

16. *Charge of Court; Argumentative Instructions.*—Where the telegram was sent by plaintiff's agent, a charge was properly refused as argumentative which asserted that it was possible that plaintiff understood that the alleged agent was acting for her when he went to send the message, but the evidence must show also that he agreed to act as her agent.

17. *Misleading Instructions.*—A charge which requires a jury to ascertain and determine what the negligence charged in the complaint was, is misleading.

18. *Same; Invading Province of Jury.*—Charges upon the effect of evidence and charges asserting that there was no evidence of particular facts are properly refused as invading the province of the jury.

(Simpson, J., dissents.)

APPEAL from Walker Law and Equity Court.

Heard before Hon. THOMAS L. SOWELL.

Action by Avie Northcutt against the Western Union Telegraph Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The first assignment of error is that the court erred in refusing to sustain defendant's motion to strike the following averments of the complaint: (1) "The said Jack Van Horn and Sallie Van Horn, her mother, could have reached plaintiff's home before her husband, Harry Northcutt, was buried, and could have comforted and consoled plaintiff in her sore affliction; and plaintiff avers that on account of plaintiff's negligence and carelessness in delivering said message plaintiff was prevented from having the comfort and consolation in her affliction which her mother and father could have and would have rendered her, had they been present while her husband was lying a corpse and also at the burial." (2)

Also the words, "and Sallie Van Horn, her mother," and the words, "and her mother," where the same appear in the first and second counts of the complaint.

The second assignment of error is that the court erred in refusing to strike from the complaint those words set out in the first assignment of error, numbered 1 and 2, and the following: "Plaintiff's said father, Jack Van Horn, and Sallie Van Horn, her mother, could have reached the place where plaintiff's husband, Harry Northcutt, was lying dead, in time to have been with plaintiff and consoled and comforted her before and at the time of her husband's burial, and during the time of her bereavement." And "the plaintiff was prevented from having the presence, consolation and comfort of said father and mother before and at the time of her husband's burial, and during her berevement." And defendant further moves to strike from said second count the entire averment of damages as therein set forth.

The third assignment of error is that the court erred in refusing to strike those certain averments by which plaintiff claimed damages by reason of the alleged fact that she lost the consolation and comfort which she would have received from her father, Jack Van Horn, as contained in said complaint.

The fourth and fifth assignments of error alleges error in overruling demurrers to the first and second counts of the complaint, which necessitates the setting out of the complaint, which is as follows:

Count 1: "Plaintiff claims of defendant the sum of $1,800 as damages for the breach of a contract made by plaintiff through her agent, A. D. Northcutt, and defendant, on or about the 1st day of October, 1906, by the terms of which defendant undertook to transmit from Nauvoo, Ala., to Dora, Ala., the following message:

'Nauvoo, Alabama, 10/1. Jack Van Horn, Dora, Alabama. Harris killed at mines. Notify Jack at once at Empire. A. D. Northcutt." And plaintiff avers that at the time of making said contract the defendant was engaged in the business of transmitting and delivering telegraphic messages for hire, and that she paid to defendant the charges for sending such message · from Nauvoo. Ala., and delivering the same at Dora, Ala. And plaintiff avers that defendant broke said contract, in this: That it was negligent and careless in delivering said message to said Van Horn at Dora, Ala.; and plaintiff avers that, had the message been delivered to her father, Jack Van Horn, within a reasonable time, her father, the said Jack Van Horn, and Sallie Van Horn, her mother, could have reached plaintiff's home before her husband, Harris Northcutt, was buried, and could · have consoled and comforted plaintiff in her sore affliction; and plaintiff futher avers that on account of plaintiff's negligence and carelessness in delivering said message plaintiff was prevented from having the comfort and consolation in her affliction which her father and mother could have and would have rendered to her, had they been present with her while her husband was lying a corpse, and also at his burial, on account of which plaintiff suffered great injury to her feelings and mental anguish, to her damage," etc.

Count 2: Same as count 1 down to and including the message, with the following averment: "And defendant contracted and undertook for a certain sum of money, which plaintiff agent then and there paid to defendant, to deliver said message to plaintiff's father, Jack Van Horn, at Dora, Ala. Plaintiff avers that defendant was engaged in the business of transmitting teleghaphic messages for hire between two said places; and plaintiff avers that defendant broke said contract, in this:

That it was negligent and careless in delivering said message to said Jack Van Horn at Dora, Ala..; that, had said message been delivered to plaintiff's father, the said Jack Van Horn, within a reasonable time, plaintiff's said father, Jack Van Horn, and Sallie Van Horn, her mother, could have reached the place where plaintiff's husband, Harris Northcutt, was lying dead, in time to have been with plaintiff and consoled and comforted her before and at the time of her husband's burial and during her bereavement; and that by reason of defendant's negligence and carelessness in delivering said message to the said Jack Van Horn at Dora, Ala., plaintiff was prevented from having the presence, consolation, and comfort before and at the time of her husband's burial, and during her bereavement, on account of which plaintiff suffered great injury to her feelings and mental anguish." etc.

The following demurrers were interposed to the counts separately: "(1) It does not appear that defendant was informed of the alleged agency of A. D. Northcutt. (2) It does not appear that plaintiff suffered in person or estate by the alleged failure to deliver said telegram. (3) The facts alleged do not show that A. D. Northcutt was an agent of plaintiff in sending the telegram set out herein. (4) The facts alleged therein show no right of recovery by plaintiff in this action. (5) The facts alleged therein fail to show that plaintiff sustained any damages by reason of the alleged failure of defendant to deliver the telegram therein described. (6) The damages therein claimed are remote, and are not recoverable on the facts alleged. (7) It is not shown in what respect defendant violated its said duty or contract. (8) It is not shown that the alleged damages followed as a proximate result of defendant's alleged wrong. (9) Said count is insufficient and indefinite, in that it is not

made to appear wherein defendant was in default in the premises. (10) No damages to the person or estate of plaintiff are claimed in and by said count."

The sixth assignment of error is that the court erred in allowing plaintiff to be asked, over the objection of defendant, this question: "After the telegram was sent to your father at Dora, notifying him of the death of your husband, did your father come to Nauvoo?" And the next assignment is as to her answer, "Not until after the funeral."

The seventh assignment of error is to permitting the question to plaintiff, concerning the time from the sending of the telegram to the burial, "Now, during that time was your father, Jack Van Horn, with you?" and the next to the answer, "He wasn't there during the funeral."

Assignments of error 8 and 8½ are to the question, "You had no relatives there?" and the answer, "No, sir."

The ninth assignment is to the following question: "I will withdraw that question, and ask you if, on account of the absence of your father, you suffered any mental affliction or suffering?" and assignment 9½ is the answer to the same, which is not put down in the transcript:

Assignments 10 and 10½ are to the question, "I will ask you if, on account of the absence of your father from the time your husband was killed and after you sent the telegram, and up to the time he was buried, up to the time he came there, and on account of that absence, you suffered any injury to your feelings and mental anguish?" and the plaintiff's answer, "Yes, sir."

Assignments 19, 20, and 21 are as follows:

"(19) In sustaining plaintiff's objection to the question propounded to Shepherd, the operator, 'Did Mr. Northcutt state to you that he was sending the message as agent for plaintiff in this case?'

35—8

"(20) Separately erred in sustaining plaintiff's objection to the following questions propounded by defendant to Shepherd: (a) 'Did any one give you any notice of any kind whatever that plaintiff in this case was the real sender of the message, and that Mr. Northcutt was simply sending it as an agent?' (b) 'State whether or not you had any information that plaintiff in this case was the sender of the message, and that A. D. Northcutt was acting merely as an agent.' (c) 'I will ask you whether or not you knew that she had anything to do with the message, or was in any way connected with it.'

"(21) The court erred in its oral charge as follows: 'So, then, gentlemen, if you believe from the evidence that Mr. A. D. Northcutt was the agent of plaintiff, and that defendant was negligent in and about its delivery, and that on account of that negligence plaintiff's father was prevented from coming to her relief and administering to her consolation and comfort during her grief, then, gentlement, it will be your duty to find for plaintiff.''

Assignment 22 has reference to the following refused charges requested by defendant:

(1) General affirmative charge.

(2 and 3) Affirmative charges as to the first and second counts.

(4) "If you believe the evidence, you cannot award any damages to plaintiff by reason of any mental pain and anguish that plaintiff may have suffered by reason of the absence of Jack Van Horn before the time of burial."

(5) "I charge you that there is no evidence in this case on which you are authorized to base a verdict awarding damages for mental pain and anguish or injury to feelings."

(6) "I charge you that if you believe the evidence plaintiff cannot recover more than 25 cents."

(8) "I charge you that there is no evidence in this case that defendant or its agents had notice, at the time the message sued on was sent, that A. D. Northcutt was acting as agent for plaintiff."

(9) "I charge you that, unless defendant had notice of the fact that A. D. Northcutt was sending the message in question as agent of plaintiff, then plaintiff cannot recover for mental distress by reason of the absence of Jack Van Horn as alleged."

(9½) "I charge you that, unless the defendant had notice of the fact that A. D. Northcutt was sending the message in question as the agent of plaintiff, then plaintiff cannot recover for damages to her feelings or for mental anguish caused by reason of the failure to deliver the message with reasonable promptness."

(10) " I charge you that, unless the defendant had notice of the fact that A. D. Northcutt was sending the message in question as the agent of the plaintiff, then plaintiff cannot recover for any damage to her feelings or for mental anguish caused by reason of the failure to deliver said message with reasonable promptness, except in the same respect in which the said A. D. Northcutt would have been entitled to recover such damages, had he in fact been the principal."

(11) "I charge you that, where telegraph companies have no notice of the fact that a person sending a message is acting as the agent for an undisclosed principal, such undisclosed principal has no right to claim damages for breach of the contract of delivery on account of mental pain and anguish."

(12) "I charge you that, where telegraph companies have no notice of the fact that a person sending a message is acting as the agent of an undisclosed principal, such undisclosed principal has no right to claim damages for a breach of the contract of delivery on the

ground of mental pain and anguish, unless the agent in whose name the contract was made himself could have recovered damages for mental pain and anguish in the event that said message should not be delivered on account of negligence of defendant."

(17) "I charge you that, while an undisclosed principal may sue upon a contract made by its agent in the latter's name, yet the principal cannot recover any damages which are peculiar to the principal and would not ordinarily flow from a breach of the contract, if entered into by the agent or on his own behalf, unless the parties sought to be charged with the breach had notice that the agent in fact was acting as the agent of some other person than himself."

(25) "I charge you that you can award no damages to plaintiff in this cause on account of the alleged fact that she was deprived of the comfort and consolation of her father's presence, unless the defendant's agent, at the time of receiving for transmission and delivery the message sued on, had notice that the purpose, or one of the purposes, for which the message was sent, was to enable plaintiff in this case to have the comfort and solace of her father's presence under the circumstances averred in the complaint."

(26) "I charge you that under the law it is established in this state that defendant telegraph company was charged with notice of the fact, if it were a fact, that the sendee of the message and the person mentioned therein as Jack had any interest in knowing of the fact that Harris Northcutt had died, and that they would suffer mental pain and anguish if they were not apprised of this fact in time to attend the funeral; but I charge you that the terms of the message sued on, of themselves alone, do not charge defendant with notice that A. D. Northcutt was acting as the agent of plaintiff in send-

ing said message, and that plaintiff sought by the sending thereof to have the comfort and solace of her father's presence, and that she would suffer mental pain and anguish at not having said comfort and solace from her said father, if the latter were prevented from coming to her by the nondelivery or delay in delivery of the message in question."

(27) "I charge you that the law does not authorize a recovery of damages by any person who may experience mental distress by reason of the delay in the delivery of the telegram. Only parties to the contract of transmission and delivery can recover such damages, and where the person who claims to be a principal in such a contract of transmission and delivery entered into with a teleghaph company is not a party to the message, nor mentioned therein, and no notice of the fact that such person is in fact a principal is acquired by the telegraph company, then the telegraph company will not be liable to such undisclosed principal for mental pain and anguish that may have been suffered by the principal, and not to be foreseen and anticipated from the terms of the message, and the parties connected therewith as known to defendant."

(28) "I charge you that, while it is the law that a person who sends a telegham may recover damages for the loss of solace and comfort by reason of the negligent failure of the telegraph company to deliver a message to the person whose solace and comfort is desired, yet I charge you that damages of this nature cannot be recovered, unless the terms of the message itself are sufficient to put the telegraph company upon notice that such solace and comfort is expected by the sender, or unless notice of that fact is brought home to the telegraph company from some other source than the message itself."

(29) "I charge you that the message in this case is not .

sufficient [in its terms to charge the defendant with notice of the fact that the comfort and solace of the sendee was expected by the sender or by plaintiff, and unless you believe that notice of such a fact was brought home to defendant in some other way at the time said message was sent, then you cannot award plaintiff any damages on account of the alleged fact that she was deprived of the solace and comfort that her father would have rendered her had he been present before the funeral."

(30) "I charge you that there is no evidence in this case that Jack Van Horn could have reached Nauvoo by passenger train before the funeral, even if the message had been delivered to him the instant it was received by the agent at Nauvoo."

(31) "I charge you that at the time the message in question was delivered to defendant's agent at Nauvoo the passenger train running from Dora to Jasper, where connection might have been made with the passenger train from Jasper to Nauvoo, had already passed Dora on its way to Jasper, and that the defendant is in no sense liable to plaintiff, or to any other person, for the failure to notify Van Horn in time for him to catch that thain."

(32) "I charge you that, if the telegram in question was delivered to Jack Van Horn at Dora, Ala... before any passenger train passed that place from the time the telegram was delivered at Nauvoo, then your verdict must be for the defendant."

(c) "I charge you that it is possible that plaintiff understood that A. D. Northcutt was acting as plaintiff's agent when he left to send the alleged message; but the evidence must go further before you can find for the plaintiff, and establish to your reasonable satisfaction that A. D. Northcutt also understood and agreed so to act."

(d) "I charge you that, unless you are able to distinguish the grief of plaintiff which would have been relieved by the presence of her father from the grief she was otherwise suffering by reason of the husband's death, and which would not have been removed or lessened by the presence of her father, then you cannot find any damages for plaintiff based on the theory of mental pain and anguish."

(e) "I charge you that if you believe the evidence in this case you cannot find any damages for plaintiff for mental suffering caused by reason of the absence of her father from Nauvoo, except during the period beginning with the time he would have reached Nauvoo, had he gone by way of Carbon Hill on the 5 o'clock train on October 1st and driven from there to Nauvoo, and ending with the time he would have reached Nauvoo, had he taken the morning train to Carbon Hill, and driven from thence to Nauvoo on October 2d."

(g) "I charge you that there is no evidence in this case that defendant, or its agents, in the line and scope of their duty, left the alleged message in question, after its transmission to Dora, with the lady who is said to have lived near Van Horn."

The following charges were given for the plaintiff:

(1) "I charge you gentlemen, that if plaintiff's father was prevented from going to the relief of plaintiff by reason of the negligence of defendant, the fact of the agency of A. D. Northcutt being established to your reasonable satisfaction as claimed, she would be entitled to recover for the anguish she may have suffered on account of his absence up to the time he could have gotten to her after receiving her message, even if the jury should believe he could have gotten to her before he did after he received her message."

(2) "The court charges the jury that if they believe, from all the evidence, that Mrs. Northcutt instructed A. D. Northcutt to go and send the telegram to her father at Dora, and A. D. Northcutt did send the telegram mentioned in the complaint to her father, Jack Van Horn, this would make A. D. Northcutt the agent of plaintiff in sending said telegram."

CAMPBELL & JOHNSON, for appellant. While an undisclosed principal may sue for the breach of a contract to deliver a telegram, the overwhelming weight of authority is to the effect that he can not recover damages for mental pain and anguish sustained by him, where his connection with the message is not communicated to the telegraph company.—*Helms v. W. U. T. Co.*, 8 L. R. A. (N. S.) 249 and full note; *Poteat v. W. U. T. Co.*, 74 S. C. 492, 55 S. E. 113; *W. U. T. Co. v. Kirkpatrick*, 76 Tex. 217, 18 A. St. Rp. 37, 12 S. W. 70; *Square v. W. U. T. Co.* 98 Mass. 237, 93 A. Dec. 157; *W. U. T. Co. v. Proctor*, 6 Tex. Civ. App. 300, 25 S. W. 813; *R. R. Co. v. Seals*, 41 S. W. 841; *Elliott v. Teleg. Co.*, 75 Tex. 16 Am. Rep. 872; *W. U. T. Co. v. Brown*, 71 Tex. 722, L. R. A. 766; *S. W. Tel. etc., Co. v. Gotcher*, 93 Tex. 114, 53 S. W. 686; *Davidson v. W. U. T. Co.*, 21 Ky. L. Rep. 1282, 54 S. W. 830; *Morrow v. W. U. T. Co.*, 107 Ky. 517, 54 S. W. 853; *Rogers v. W. U. T. Co.*, 72 S. C. 290, 51 S. E. 773; *Crawford v. W. U. T. Co.*, 138 N. C. 162, 50 S. E. 585; *W. U. T. T. Co. v. Kerr*, 4 Tex. Civ. App. 280, 23 S. W. 264; *W. U. T. Co. v. Proctor*, 6 Tex. Civ. App. 300, 25 S. W. 813; *W. U. T. Co. v. Carter*, 85 Tex. 580, 34 Am. St. Rep. 826, 22 S. W. 961; *W. U. T. Co. v. Kirkpatrick*, 76 Tex. 217, 18 Am. St. Rep. 37, 17 S. W. 70. The measure of damages for breach of contract to deliver a telegram, like the measure of damages in actions for the breach of any contract, is subject to the limita-

tions laid down in *Hadley v. Baxendale*. Only such damages are recoverable as, at the time of entering into the contract, would have reasonably been expected by both parties to result from a possible breach.— —*Rogers v. W. U. T. Co.*, 72 S. C. 290, 51 S. E. 773; *W. U. T. Co. v. Way*, 83 Ala. 542, 4 South. 844; *Henderson v. W. U. T. Co.*, 89 Ala. 510, 7 South. 419; *W. U. T. Co. v. Westmoreland*, 44 South. 382. Peculiar circumstances not communicated by the sender and not ascertainable from the contents of the telegram can not be made the basis for a recovery of damages for failure to deliver the telegram.—*W. U. T. Co. v. Way*, 83 Ala. 542, 4 South. 844. It is a general principle that, while an undisclosed principal may sue upon a contract made by his agent, the action will be subject to the other party's right to set up any defense he might have used against the agent, had the latter been, in fact, the principal.— *City of Huntsville v. Gas Co.*, 70 Ala. 191, cited by Dowdell, J., in *Manker v. W. U. T. Co.*, 137 Ala. 292; *Bernshouse v. Abbott*, 45 N. J. L. 531. Where the contents of a message, considered with reference to the parties named therein, would impute notice of a given state of facts to the telegraph company, an undisclosed principal can not come in and recover damages arising out of a different and inconsistent relationship or circumstance not communicated to the company.—*W. U. T. Co. v. Luck*, 41 S. W. 469, approved in *W. U. T. Co. v. Ayres*, 131 Ala. 394. Where a telegram is sent requesting the sendee to notify a third person of a death, notice is not thereby conveyed to the telegraph company that the message is sent for the purpose of procuring the consolation of the sendee, particularly where the name of the sendee does not suggest any relationship to the sender, and, as a matter of fact, no relationship exists between sender and sendee.—*W. U. T. Co. v. Luck*, 41 S. W. 469, and

cases cited, (approved in *W. U. T. Co. v. Ayers,* 131 Ala. 394). Mental pain, anxiety, and distress are not ordinarily in the contemplation of the parties to a contract as a natural result of its breach; nor, where a telegram is sent, can it be said that the sender would reasonably be expected to suffer mental anguish caused by losing the consolation of the sendee, when the message failed to request the latter's presence and pertained, on its face, to a different matter.—*W. U. T. Co. v. Westmoreland,* 44 South. 382; Cases cited in *W. U. T. Co. v. Ayers,* 131 Ala. 394; *W. U. T. Co. v. Brown,* 2 L. R. A. 766, and note. When supported by any legal evidence it is a question for the jury whether or not a person suffered mental pain and anguish or other damage, and, particularly, whether or not such damage was caused by the act of the defendant. It is error (a) to allow a witness to testify what was the proximate cause of such damages, or (b) for the court to assume the existence thereof, and thus invade the province of the jury.—*City Nat'l Bank v. Jeffries,* 73 Ala. 183; *Sledge v. Scott,* 56 Ala. 202; *W. U. T. Co. v. Merril,* 39 South. 121; *S. S. S. & I. Co. v. Smith,* 40 So. 91 (charge 7). "A party cannot discredit the testimony of his own witness, or show the latter's incompetency; and the reason of this is,—because it would be unfair that he should have the benefit of the testimony, if favorable, and reject it if the contrary."—*Winston v. Moseley,* 2 Stew. 127; *So. Bell Tel. Co. v. Mayo,* 33 South. 16, 134 Ala. 641; *Dundas v. Lansing,* 75 Mich. 499, 13 Am. Rep. 457, 5 L. R. A. 143; *Bullard v. Pearsall,* 53 N. Y. 230; 50 Cent. Dig. "Witnesses," Sec. 1094. The declaration and admissions of an agent are not admissible against the principal unless they come within the scope of his authority, and are so proximate to the main fact in point of time as to be regarded as part of the "res gestae," serving to elucidate or explain

the nature and character of the transaction, and unless, further, the fact of such agency is proven.—*Turrell v. Morgan,* 7 Minn. 372, 375; Wigmore on evidence, secs. 8, 2134. While, in an action for the failure of a telegraph company promptly to transmit and deliver a telegram, the written message ultimately received by the sendee from the defendant or its agents is admissible to prove the time, manner, and accuracy of defendant's performance of the contract, such message is not admissible as proof of the execution of the contract; and is not admissible for any purpose until the execution of the contract has been proven as alleged. In the case of *Collins v. W. U. T. Co.,* 41 South. 160, and cases cited, the contract of transmission was admitted and the delivery to the sendee of a correct message by admitted agents of the defendant was proven. Had proof of either fact been lacking the message received by the sendee in the *Collins case* would have been inadmissible.—*Matteson v. Noyes,* 25 Ill. 491; *W. U. T. Co. v. Hopkins,* 49 Ind. 223, 227; *Howley v. Whipple,* 48 N. H. 487; *Williams v. Brickell,* 37 Miss 682; *Smith v. Easton,* 54 Md. 138, 145; 31 Minn. 481, 18 N. W. 291; *Western Twine Co. v. Dwight,* 11 S. D. 521, 78 N. W. 942. The averment of agency is material and must be proven.—*Heathcoat v. W. U. T. Co.* (Mss.); *W. T. U. Co. v. Adams,* (Mss.); *W. U. T. Co. v. Hearthcoat,* 43 South. 117, and cases cited; *W. U. T. Co. v. Adair,* 115 Ala. 441.

G. O. CHENAULT, for appellee. In tort mental suffering can be recovered.—*Krichbaum's Case,* 133 Ala. 536; *Manker's Case,* 145 Ala. 424. A plaintiff may recover the loss sustained where the message is in cipher and the agent knows nothing of its meaning, so it is not essential that the message should disclose on its face that a failure to deliver would likely result in loss.—

*Daugherty's Case*, 75 Ala. 168; *Way's Case*, 83 Ala. 542. The relation was sufficient.—*Croker's Case*, 135 Ala. 492. The complaint was sufficient.—*Whitson's Case*, 145 Ala. 426. Although no substantial damages be proved damages for mental suffering may be recovered on allegations and proof of facts entitled plaintiff to recover nominal damages for breach of contract.—*Kennon's Case*, 92 Ala. 402; authorities supra.

SIMPSON, J.—This action was brought by the appellee for damages for delay in delivering a telegram. The action is on the contract, and alleges that plaintiff's husband was killed accidently; that her brother-in-law (Northcutt), as her agent, sent from Nauvoo, Ala., to her father (Van Horn) at Dora, Ala., a telegram in these words :"Harris killed in mines. Notify Jack at once at Empire. [Signed] A. D. Northcutt." "Harris" was plaintiff's husband, and "Jack" was a brother of his. There is some conflict in the evidence as to the agency of Northcutt in sending the message; but, according to the plaintiff's statement, she requested him to send the telegram to her father, and added the request to notify his brother.

Plaintiff claims that, by reason of the delay in the delivery, her father could not and did not reach Nauvoo until after her husband was buried, so that her principal claim for damages is for mental anguish for the day during which the arrangements were being made and the funeral was conducted, on account of being deprived of the consolation of having her father with her. Upon the general subject of recovery for mental anguish in such cases, the authorities in other states are in hopeless conflict; but our own court has carefully gone into the matter and has arrived at certain definite conclusions which it may be well to state in the outset, for it

is not deemed wise, at this day, to go behind our deci-
sions and open up this wide field of controversy for a
new alignment of principles.

First. An undisclosed principal may sue on a contract
made by an agent.—*W. U. Tel. Co. v. Millsap*, 135 Ala.
415, 33 South. 160, and cases cited; *Manker v. W. U. Tel.
Co.*, 137 Ala. 292, 34 South. 839; *Western U. Tel. Co. v.
Manker*, 145 Ala. 418, 41 South. 850.

Second. Where there is a right of recovery of any-
thing else on the contract, a recovery may be had in ad-
dition for mental anguish.—*W. U. Tel. Co. v. Krich-
baum*, 132 Ala. 535, 31 South. 607; *W. U. Tel. Co. v.
Henderson*, 89 Ala. 510, 518, 519, 7 South. 419, 19 Am.
St. Rep. 148.

Third. While there has been some criticism of the
rule laid down in the leading case of *Hadley v. Baxen-
dale*, 9 Exch. 241, to wit, that the damages for the breach
of a contract "should be such as may fairly and reasona-
bly be considered either arising naturally—i. e., accord-
ing to the usual course of things—from such breach of
contract itself, or such as may reasonably be supposed to
have been in the contemplation of the parties, at the time
they made the contract, as the probable result of the
breach of it," yet that criticism was only verbal, to the
extent that it would be more accurate to say that any
special facts which magnify the transaction and entitle
the party to special damages should be brought within
the contemplation of the parties.—*Daughtery v. Am.
Union Tel. Co.*, 75 Ala. 168, 176, 177, 51 Am. Rep. 435.
This and other cases adhere to the rule in said leading
case, but hold that, by reason of the peculiar nature of
the telegraph company and the duties it undertakes to
the public, the very fact of a communication being sent
by telegraph gives notice that expedition is the main
object in view; so that it is not necessary to bring to its

attention the circumstances which call for sending the message without delay, or even to couch the message in language which may be understood.—*W. U. Tel. Co. v. Way,* 83 Ala. 542, 557, 558, 4 South. 844.

It must be acknowledged that this element of damage is very vague and uncertain; that it is very difficult, if not impossible, for a jury to ascertain how much mental anguish a person endures, and to translate it into dollars and cents; and also that, if this principle should be applied to contracts generally, it would be very far-reaching, and possibly ruinous to many commercial transactions. Consequently our court has said that it is to be allowed only in case of messages between persons occupying close degrees of relationship, relating to exceptional events such as sickness or death, and that "to extend as a natural result the allowance on other occasions 'would * * * tend to promote and encourage a species of litigation more or less speculative in its nature, and unjust and oppressive in its results.' "—*W. U. Tel. Co. v. Westmoreland,* 151 Ala. 319, 44 South. 382, 383; *W. U. Tel. Co. v. Ayers,* 131 Ala. 391, 394, 31 South. 78, 90 Am. St. Rep. 92.

It is contended by the appellant that, according to the overwhelming weight of authority, no recovery can be had for mental suffering where the connection of the plaintiff with the message is not brought home to the telegraph company. The cases referred to in appellant's brief do not seem to rest upon any peculiarity in regard to mental suffering as an element of damage, but rather upon the general principle, held by some courts, in construing the *Hadley-Baxendale Case,* which we have seen does not obtain in this state in cases against telegraph companies, to wit, that the company is not liable unless informed of the circumstances which would cause the loss or suffering. Thus the principal case relied on

(*Helms v. W. U. Tel. Co.*, 143 N. C. 386, 55 S. E. 831,
8 L. R. A. [N. S.] 549, 118 Am. St. Rep. 811) argues
upon the general principle, while the case of *Primrose v.
W. U. Tel. Co.*, 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed.
883, involved a cipher message about a commercial trans-
action. The case of *W. U. Tel. Co. v. Luck*, 91 Tex. 178,
41 S. W. 469, 66 Am. St. Rep. 869, and *Same v. Kirkpat-
rick*, 76 Tex. 217, 13 S. W. 70, 18 Am. St. Rep. 37, and
others which it is unnecessary to cite, rest upon the same
general principle.

For these reasons it is the opinion of the writer that,
without overruling or modifying our previous decisions,
this contention cannot be sustained; but the majority of
the court (consisting of Tyson, C. J., and Dowdell,
Denson, and Anderson, JJ.) hold that, the plaintiff's
relation to the contract not having been disclosed to the
telegraph company, and it not appearing in the telegram,
she is not entitled to recover for mental pain and an-
guish, and in support of that proposition they cite *Helms
v. W. U. Tel. Co.*, 143 N. C. 386, 55 S. E. 831, 8 L. R. A.
(N. S.) 249, 118 Am. St. Rep. 811, and note; *Protcet v.
W. U. Tel. Co.*, 74 S. C. 492, 55 S. E. 113; *W. U. Tel. Co.
v. Kirkpatrick*, 76 Tex. 217, 13 S. W. 70, 18 Am. Rep.
37; *Squire v. W. U. Tel. Co.*, 98 Mass. 237, 93 Am. Dec.
157; *W. U. Tel. Co. v. Procter*, 6 Tex. Civ. App. 300, 25
S. W. 813; *Railroad Co. v. Seals* (Tex. Civ. App.) 41 S.
W. 841; *Elliott v. Telegraph Co.* 75 Tex. 18, 12 S. W. 954,
16 Am. St. Rep. 872; *W. U. Tel. Co. v. Brown*, 71 Tex.
723, 10 S. W. 323, 2 L. R. A. 766; *S. W. Tel. Co. v. Gotch-
er*, 93 Tex. 114, 53 S. W. 686; *Davidson v. W. U. Tel. Co.*,
54 S. W. 830, 21 Ky. Law Rep. 1292; *Morrow v. W. U.
Tel. Co.*, 107 Ky. 517, 54 S. W. 853; *Rogers v. W. U. Tel.
Co.*, 72 S. C. 290, 51 S. E. 773; *Cranford v. W. U. Tel.
Co.*, 138 N. C. 162, 50 S. E. 585; *W. U. Tel. Co. v. Kerr*,
4 Tex. Civ. App. 280, 23 S. W. 264; *W. U. Tel. Co. v.

*Carter,* 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826;
*W. U. Tel. Co. v. Weniski,* 84 Ark. 457, 106 S. W. 486.

Mental suffering, resulting from the absence of some
one whose presence would be consoling in the time of
grief, is recognized as a proper subject of damage.—
Jones on Telegraph and Telephone Companies, § 543, p.
519. From what has been said, it results, from the
opinion of the majority of the court, that the averments
of the complaint in regard to mental suffering should
have been stricken on motion, and that the charges re-
quested by the defendant on the ground of mental suffer-
ing should have been given.

The plaintiff, when on the stand as a witness, was
asked this question, to wit,: "I will ask you if, on ac-
count of the absence of your father from the time your
husband was killed, and after you sent the telegram,
and up to the time he was buried, up to the time he came
there, and on account of that absence, you suffered any
injury to your feelings and mental anguish." This ques-
tion was objected to, and the answer (which was "Yes")
was moved to be excluded, and the motion overruled.
This was error. In an attachment case, in which it was
sought to recover for wounded feelings, this court held
that it was improper to permit the plaintiff to testify
that he was "much distressed, and harassed in body and
mind"—that he "was almost crazy." The court, speak-
ing through Stone, J., said: "Such testimony as this
can be legal, only on the theory that for wrongs, identical
in nature and degree, the man of delicate organism and
acute sensibilities is entitled to greater damages than
one of more stoical nature. * * * But such suffer-
ing is not the subject of direct proof. It is an inference
to be drawn by the jury from the manner and causeless-
ness of the wrong."—*City National Bank v. Jeffries,* 73
Ala. 183, 192-193. In the case of *Roberts v. W. U. Tel.*

*Co.,* 73 S. C. 520, 52 S. E. 985, there was no objection to the testimony; but, in discussing a charge, the court merely remarks that "the plaintiff * * * may testify to the fact that he suffered, after the circumstances from which the suffering might arise have been brought out; but he cannot testify as to his peculiar apprehensions, fears, and conclusions, because these might be due to individual temperament."

Another reason why this testimony should be excluded is that it relates to her mental suffering from the time her husband was killed; whereas, if the defendant was liable at all, it could only be for the time between the hour when the father could have gotten there, if the telegram had been promptly delivered, and the time when he did get there.

It was error to allow the plaintiff to ask her own witness—Northcutt—if he was not very much distressed at the time and hardly knew what he was doing. The evident purpose of this was to discredit plaintiff's own witness, who had testified in certain matters differently from what the plaintiff had testified. This could not be done.—*Winston v. Moseley,* 2 Stew. 137, 139; *So. Bell Tel. & Tel. Co. v. Mayo,* 134 Ala. 641, 33 South. 16; *Dundas v. Lansing,* 75 Mich. 499, 42 N. W. 1011, 5 L. R. A. 143, 13 Am. St. Rep. 457; *Bullard v. Pearsall,* 53 N. Y. 230.

The objection to the question to the witness Northcutt as to his age and the age of Jack Northcutt was not made until after it was answered, and the objection was properly overruled for this, if for no other reason.

The court erred in refusing to admit the delivery sheet, after proof of the genuineness of the signature. If there was evidence contradicting the genuineness of the signature, it was a queston for the jury to determine whether

36—8

the telegram was received at the time therein specified. —2 Wigmore on Ev. § 1261 ; 3 Wigmore on Ev. § 2134.

There was no error in admitting the telgram received by Van Horn. The matter of the letters and figures thereon was open to proof as to their meaning, and as to when and by whom they were placed on it, as was also the matter as to whether the person who delivered it was the agent of the defendant.—*Collins v. W. U. Tel. Co.*, 145 Ala. 412, 41 South. 160.

The court was in error, after this paper had been introduced, in remarking to counsel for defendant, who denied the delivery of the said message, "you are responsible for it."

The court erred in refusing to give charges 13, 15, 16, "o," and "p," requested by the defendant. The plaintiff could recover only on the theory that Northcutt, in sending the telegram, sent it as her agent. In order to constitute an agency, it requires the concurrence of the minds of both the principal and the agent.—*W. U. Tel. Co. v. Adams*, 154 Ala. 657, 47 South. 228; *Heathcoat v. W. U. Tel. Co.*, 156 Ala. 339, 47 South. 139; *W. U. Tel. Co. v. Heathcoat*, 149 Ala. 623, 43 South. 117; *W. U. Tel. Co. v. Adair*, 115 Ala. 441, 22 South. 73.

Charge "c," requested by the defendant, was an argument, and was properly refused; and charge "f" was misleading and faulty, for referring to the jury to determine what the negligence charged in the complaint was.

Charges 30, 31, "e," and "g" invaded the province of the jury and were properly refused.—*So. C. & C. Co. v. Swinney*, 149 Ala. 406, 42 South. 808.

Charge 32 was properly refused, as a passenger train might have passed just after he received the telegram, not leaving sufficient time for him to have reached the depot.

Charge 1, given at the request of the plaintiff, should have been refused. If she was entitled to recover for mental anguish on account of his absence, it would not be "up to the time he could have gotten to her after he received the message," but from the time he could and would have reached, up to the time he actually did reach, her.

Charge 2, given at the request of the plaintiff, should have been refused. Although plaintiff may have requested Northcutt to send the telegram to her father, yet if, as a matter of fact, he did not send it as her agent, but on his own account, he was not acting as her agent.

The judgment of the court is reversed, and the cause remanded.

TYSON, C. J., and DOWDELL, ANDERSON, and DENSON, JJ., concur. SIMPSON, J., dissents.